# JS-6

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SOUTHERN DIVISION**

|  |  |
|---|---|
| KUSUMAM KOSHY, derivatively on behalf of QUALITY SYSTEMS INC., <br><br> Plaintiff, <br><br> v. <br><br> CRAIG A. BARBAROSH, GEORGE H. BRISTOL, JAMES C. MALONE, PETER M. NEUPERT, MORRIS PANNER, D. RUSSELL PFLUEGER, STEVEN T. PLOCHOCKI, SHELDON RAZIN, LANCE E. ROSENZWEIG, and PAUL A. HOLT, <br><br> Defendants, <br> and <br> QUALITY SYSTEMS, INC., <br><br><br> Nominal Defendant. | Case No.: SACV 17-01694-CJC(JPRx) <br><br><br><br> **ORDER GRANTING DEFENDANTS' MOTION TO DISMISS WITH PREJUDICE** |

## I.  INTRODUCTION

This is a shareholder derivative action brought on behalf of nominal defendant Quality Systems, Inc. ("QSI") against the current and former executive officers and directors of QSI–Craig A. Barbarosh, George H. Bristol, James C. Malone, Peter M. Neupert, Morris Panner, D. Russell Pfleuger, Steven T. Plochocki, Sheldon Razin, Lance E. Rosenzweig, and Paul A. Holt (together, "Defendants").  The Complaint alleges that these executive officers and directors breached their fiduciary duties and abused their control over the company by (1) "causing or allowing [QSI] to disseminate materially misleading and inaccurate information" in 2011 and 2012, (2) failing to "adopt and implement an effective system of internal controls," and (3) "failing to seek recoupment of insider trading proceeds and incentive compensation from Plochocki and Holt."  (Dkt. 1 [Complaint, hereinafter "Compl."] ¶¶ 188–97.)  The Complaint also alleges that Plochocki engaged in insider trading in 2012, and that Razin, Plochocki, and Holt were unjustly enriched.  (*Id.* ¶¶ 198–204.)  Before the Court is Defendants and nominal defendant's motion to dismiss Plaintiff's Complaint.  (Dkts. 26 [Notice of Motion], 26-1 [Memorandum of Points and Authorities, hereinafter "Mot."].)  Defendants argue that the Complaint should be dismissed for two independent reasons–the statute of limitations bars Plaintiff's claims, and Plaintiff's failure to comply with the shareholder demand requirement under Federal Rule of Civil Procedure 23.1 before filing her Complaint.  The Court agrees.  Accordingly, Defendants' motion is GRANTED and Plaintiff's Complaint is DISMISSED WITH PREJUDICE.

## II.  BACKGROUND

QSI is a publicly-traded California company that develops and markets practice management and electronic health records ("EHR") software to medical and dental care providers.  (Compl. ¶¶ 2, 16, 34–35.)  In 2009, Congress passed the American Recovery

and Reinvestment Act ("ARRA"), which provided government funds to incentivize healthcare providers to adopt EHR technology.  *See* 42 U.S.C.A. § 1395w-4(o)(1)(A), (E).  As a provider of EHR, QSI "experienced significant growth due primarily to the success of its NextGen business unit," which sold EHR to healthcare providers adopting the technology.  (Compl. ¶¶ 35–36, 39.)  Indeed, between 2000 and 2009, NextGen's business grew by 1300%.  (*Id*. ¶ 36.)

However, beginning in 2010, NextGen's new business, known as "greenfield opportunities," allegedly began to slow down.  (*Id*. ¶¶ 36–37, 43, 50.)  Despite knowledge of the decline in greenfield opportunities, Defendants allegedly caused QSI to issue false and misleading statements between 2010 and 2012 touting its "'robust' pipeline of business driven by 'unprecedented demand.'"  (*Id*. ¶¶ 3, 39–94.)  On September 27, 2011, QSI's stock price reached an all-time high of $50.04 per share.  (*Id*. ¶ 3.)  Plochocki sold nearly 90% of his holdings in QSI stock on February 24, 2012, for proceeds valued at nearly $4 million.  (*Id*. ¶¶ 6–7.)

On June 26, 2012, Razin, Barbarosh, Bristol, Rosenzweig, and Plochocki issued an "open letter" with QSI's proxy materials expressing confidence that QSI's "revenues [would] increase in the 20–24% range and its earnings per share [would] grow by 20–25%" for fiscal year 2013 ("FY2013").[1]  (*Id*. ¶ 87.)  QSI reaffirmed its FY2013 guidance on July 13 and 23, 2012.  (*Id*. ¶ 94.)  One month later on July 26, 2012, QSI issued a press release and retracted its earnings guidance and revealed that its business was in "severe decline."  (*Id*. ¶¶ 95, 104.)  During a conference call that same day, Plochocki announced that QSI's decline was attributable to "lower than expected revenue from large, higher margin software system sales," but did not provide an explanation for the

---

[1]  QSI's FY2013 began on April 1, 2012, and ended on March 31, 2013.  (Compl. ¶ 6 n.2.)

change in QSI's prospects.  (*Id*. ¶ 96.)  That day, QSI's stock price plunged from $23.63 per share to $15.04 per share.  (*Id*. ¶ 104.)

On October 4, 2013, QSI's second largest shareholder, Ahmed Hussein, sued QSI alleging fraud and breaches of fiduciary duty by Razin and Plochocki in connection with the July 26, 2012, disclosure and stock price decline ("Hussein Action").  (*Id*. ¶ 105.)  Then on November 19, 2013, a shareholder class action was initiated on behalf of persons who purchased QSI stock from May 26, 2011, through July 25, 2012, against QSI, Plochocki, Razin, and Holt ("Securities Class Action").  (*Id*. ¶ 106.)  The Securities Class Action, similar to the Hussein Action, alleged that QSI made material misstatements regarding its growth prospects and that the truth about these purported misstatements became known on July 26, 2012.  In January 2014, Timothy Foss, a QSI shareholder, filed a derivative action against certain members of QSI's Board alleging breaches of fiduciary duty, abuse of control, mismanagement, unjust enrichment, and insider trading ("Foss Derivative Action").  (*See Foss v. Barbarosh*, No. 8:14-cv-00110-CJC-JPR (C.D. Cal. Jan 24, 2014) Dkt. 1.)  The allegations in the Foss Derivative Action closely track those in the Securities Class Action.

On September 28, 2017, Plaintiff filed this lawsuit.  Plaintiff is a current shareholder of QSI and has been a shareholder since 2007.  (Compl. ¶ 15.)  Plaintiff asserts claims against two former QSI officers (Plochocki and Holt), three former directors (Plochocki, Neupert, and Pflueger), and six current directors (Barbarosh, Bristol, Malone, Panner, Razin, and Rosenzweig).  In addition to allegations that track those of the three related, previously filed actions, Plaintiff alleges that the current Board approved amendments to QSI's indemnification agreements with Razin, Plochocki, Holt, Barbarosh, Bristol, Plfueger, and Rosenzweig on January 23, 2013.  (*Id*. ¶¶ 147, 177.)  QSI announced that it had entered into amended indemnification agreements with Razin, Holt, and Plochocki on January 28, 2013.  (*Id*. ¶ 148.)  Plaintiff also alleges that QSI

allowed Plochocki to resign and approved his separation agreement in June 2015,

"[r]ather than protecting [QSI's] interests by suing Plochocki for his wrongful conduct."

(*Id.* ¶¶ 160–63.)  Plaintiff did not make a pre-suit demand on QSI's nine member board,

which consisted of Barbarosh, Bristol, Malone, Panner, Razin, Rosenzweig, Rusty

Frantz, Julie Klapstein, and Jeffrey Margolis when Plaintiff filed her Complaint.  (*Id.* ¶¶

167–68.)

Plaintiff asserts four "counts" against the Defendants: (1) breach of fiduciary duty

against all Defendants, (*id.* ¶¶ 188–92), (2) abuse of control against all Defendants, (*id.* ¶¶

193–97), (3) unjust enrichment against Razin, Plochocki, and Holt, (*id.* ¶¶ 198–200), and

(4) breach of fiduciary duty for insider trading against Plochocki, (*id.* ¶¶ 201–204).

## III.  DISCUSSION

Defendants argue that the statute of limitations bars all four of Plaintiff's claims

because they accrued no later than July 26, 2012, when QSI disclosed the "truth" about

its sales and earnings prospects.  (Mot. at 7–10.)  Plaintiff argues that QSI's disclosure on

July 26, 2012, only provided "inquiry notice concerning potential claims against QSI and

its officers for securities fraud," but not for her claims.  (Dkt. 28 [Plaintiff's Opposition,

hereinafter "Opp."] at 20–23.)

A complaint is properly dismissed under Rule 12(b)(6) where it is apparent on the

face of the pleading that the plaintiff's claims are barred by the statute of limitations.

*Deirmenjian v. Deutsche Bank, A.G.*, 526 F. Supp. 2d 1068, 1073 (C.D. Cal. 2007); *see*

*Morales v. City of Los Angeles*, 214 F.3d 1151, 1153 (9th Cir. 2000) ("The district court

may grant a 12(b)(6) motion to dismiss on statute of limitations grounds 'only if the

assertions of the complaint, read with the required liberality, would not permit the

plaintiff to prove that the statute was tolled.'") (quoting *TwoRivers v. Lewis*, 174 F.3d

987, 991 (9th Cir. 1999) (internal quotations omitted)).  "Where the dates pertinent to the running of the statute cannot be determined from the allegations of the complaint, however, the matter cannot be decided on a motion to dismiss, and defendants must raise the defense through a motion for summary judgment or at trial." *Deirmenjian*, 526 F. Supp. 2d at 1074 (citing *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980)).[2]

"Under the discovery rule, the statute of limitations begins to run when the plaintiff suspects or should suspect that her injury was caused by wrongdoing, that someone has done something wrong to her." *Jolly v. Eli Lilly & Co.*, 44 Cal. 3d 1103, 1110 (Cal. 1988).  Thus, the limitations period begins once the plaintiff "has notice or information of circumstances to put a reasonable person *on inquiry . . ..*" *Gutierrez v. Mofid*, 39 Cal. 3d 892, 896 (Cal. 1985) (quoting *Sanchez v. South Hoover Hospital*, 18 Cal. 3d 93, 101 (Cal. 1976)).  "[A] cause of action under the discovery rule accrues when the plaintiff discovers or should have discovered all facts essential to his cause of action . . . when plaintiff either (1) actually discovered his injury and its negligent cause or (2) could have discovered injury and cause through the exercise of reasonable diligence." *April Enterprises Inc. v. KTTV*, 147 Cal. App. 3d 805, 826 (Ct. App. 1983) (internal quotations and citations omitted).  Indeed, the California Supreme Court has expressly disapproved of the notion that a plaintiff "must do more than suspect a factual basis for the elements

---

[2]  Plaintiff argues that whether Plaintiff has exercised diligence is "an issue of fact and thus improper for resolution at the pleading stage." (Opp. at 23.)  Plaintiff cites *Favila v. Katten Muchin Rosenman LLP*, 188 Cal. App. 4th 189, 224–25 (2010), *as modified on denial of reh'g* (Sept. 22, 2010) to support her proposition.  In *Favila*, the court overruled the defendant's demurrer based on a statute of limitations defense because of a factual dispute whether the plaintiff knew attorneys had assisted in the purportedly illegal transactions at issue.  *Id.*  But the court in *Favila* approved of granting a demurrer when "the complaint alleges every fact which the defendant would be required to prove if he were to plead the bar of the applicable statute of limitations as an affirmative defense." *Id.* at 224.

of a cause of action in order to discover the cause of action."  *Norgart v. Upjohn Co.*, 21 Cal. 4th 383, 410 n.8 (Cal. 1999).[3]

### A.  Counts 1 and 2 – Breach of Fiduciary Duty and Abuse of Control

In Count 1, Plaintiff asserts that all Defendants breached their fiduciary duties by "causing and allowing [QSI] to disseminate materially misleading and inaccurate statements" and "failed to cause QSI to adopt and implement an effective system of internal controls" that allowed the allegedly false statements to be made.  (Compl. ¶¶ 188–92.)  In Count 2, Plaintiff asserts that Defendants abused their authority "by causing or allowing [QSI] to misrepresent material facts regarding its financial position and business prospects and by engaging in insider trading, allowing others to engage in insider trading, and failing to seek recoupment of insider trading proceeds and incentive compensation from Plochocki and Holt."  (*Id.* ¶¶ 193–97.)  The parties agree that both

---

[3] Plaintiff argues that the statute of limitations should be tolled under the doctrine of equitable tolling in light of the earlier-filed Securities Class Action and the Foss Derivative Action, which were commenced in November 2013 and August 2014, respectively.  (Opp. at 23–25.)  However, Plaintiff's allegations are inadequate, as she "does not plead that *[s]he* filed a judicial action or administrative proceeding within the statutory period that alerted defendants to the existence of [her] claims."  *Deirmenjian*, 526 F. Supp. 2d at 1092 (emphasis added).  "Under California law, which plaintiff[] contend[s] is applicable, this is a necessary prerequisite to application of the doctrine of equitable tolling."  *Id.* (citing *Collier v. City of Pasadena*, 142 Cal. App. 3d 917, 924 (1983) (noting that the first element of equitable tolling requires that a "first claim must have been filed within the statutory period" that "alert[ed] the defendant in the second [action] of the need to begin investigating the facts which form the basis of the second claim")); *see Addison v. State of California*, 21 Cal. 3d 313, 317 (1978) ("[C]ourts have adhered to a general policy which favors relieving plaintiff from the bar of a limitations statute when, possessing several legal remedies *he,* reasonably and in good faith, pursues one designed to lessen the extent of his injuries or damage.") (emphasis added).  Plaintiff argues that *Am. Pipe & Const. Co. v. Utah*, 414 U.S. 538 (1974), supports her argument that the statute of limitations should be tolled in light of the filing of the earlier related actions.  However, in *American Pipe*, the Supreme Court held that when a class action is dismissed for failure to certify the class, the statute of limitations is tolled for class members who then intervene to assert the same claims individually.  *Id.* at 539.  The holding was limited to situations "where class action status has been denied solely because of failure to demonstrate that 'the class is so numerous that joinder of all members is impracticable.'"  *Id.* at 552–53.  Thus, *American Pipe* did not address the precise situation presented here, and the Court declines to extend its rationale, which would protect stockholders' direct claims, to protect derivative claims that stockholders might assert on behalf of the corporation.

Plaintiff's breach of fiduciary duty and abuse of control claims are governed by a three-year statute of limitations period because the claims sound in fraud.  (Mot. at 8; Opp. at 22 n.6.)  *See* Cal. Code Civ. Proc. § 338(d); *Am. Master Lease LLC v. Idanta Partners, Ltd.*, 225 Cal. App. 4th 1451, 1479 (Ct. App. 2014), as modified (May 27, 2014); *City of Vista v. Robert Thomas Sec., Inc.*, 84 Cal. App. 4th 882, 889 (Ct. App. 2000) (where gravamen of complaint is fraud, claims are subject to a three-year statute of limitations).

"A breach of fiduciary duty claim is based on concealment of facts, and the statute begins to run when plaintiffs discovered, or in the exercise of reasonable diligence could have discovered, that facts had been concealed."  *Rosenblatt v. Ernst & Young Int'l, Ltd.*, 87 F. Supp. 2d 1048, 1053 (S.D. Cal. 2000), *rev'd on other grounds*, 28 F. App'x 731 (9th Cir. 2002).[4]  Plaintiff alleges that Defendants breached their fiduciary duties and abused their control by allowing QSI to make materially misleading statements about QSI's sales and earnings prospects.  Here, Plaintiff discovered, or in the exercise of reasonable diligence could have discovered, that QSI had concealed the truth about its sales and earnings prospects no later than July 26, 2012.  On that date, QSI issued a press release and retracted its earnings guidance and revealed that its business was in "severe decline."  Indeed, Plaintiff's allegations expressly say so.  (*See* Compl. ¶¶ 95 ["QSI issued a press release that shocked investors and revealed that contrary to Defendants' repeated claims . . . the Company's business was in severe decline"], 99 ["analysts covering the Company were surprised by the disclosure of QSI's true financial condition"], 114 [noting the price of QSI's stock shares on July 26, 2012, "when the

---

[4]  Plaintiff also argues that because these claims involve fiduciaries, "the duty to investigate may arise later by reason of the fact that the plaintiff is entitled to rely upon the assumption that his fiduciary is acting in his behalf."  (Opp. at 22–23 [quoting *Eisenbaum v. W. Energy Res., Inc.*, 218 Cal. App. 3d 314, 325 (Ct. App. 1990)].)  However, "once [Plaintiff became] *aware* of facts which would make a reasonably prudent person suspicious, the duty to investigate ar[ose] and [Plaintiff] may then be charged with knowledge of the facts which would have been discovered by such an investigation."  *Hobbs v. Bateman Eichler, Hill Richards, Inc.*, 164 Cal. App. 3d 174, 202 (Ct. App. 1985) (distinguishing fiduciary duty claims in which the plaintiff was not under a duty to inquire and those where the plaintiff was under such a duty).

Company's true financial condition was disclosed"].)  Plaintiff filed this action more than five years later on September 28, 2017, clearly after the three-year statute of limitations period had expired.[5]

Plaintiff admits that QSI's disclosures on July 26, 2012, provided her "inquiry notice concerning potential claims against QSI and its officers for securities fraud." (Opp. at 20.)  However, Plaintiff argues that her "derivative claims for breach of fiduciary duty differ from securities-fraud claims in terms of parties and legal theory." (*Id.*)  Specifically, Plaintiff states that as of July 26, 2012, she did not have inquiry notice that Defendants "knowing caus[ed] QSI to issue false and misleading financial statements," or that they "faile[d] to adopt and implement adequate internal controls." (*Id.* at 21.)  "Under the discovery rule, the statute of limitations begins to run when the plaintiff suspects or should suspect *that her injury was caused by wrongdoing*, that someone has done something wrong to her."  *Jolly*, 44 Cal. 3d at 1110 (emphasis added). That Plaintiff did not know the parties she would sue or the legal theories she would pursue as of July 26, 2012, is irrelevant.  *See McFall v. Stacy & Witbeck, Inc.*, No. 14-CV-04150-JSC, 2016 WL 6248882, at *3 (N.D. Cal. Oct. 26, 2016) ("The discovery rule allows accrual of the cause of action even if the plaintiff does not have reason to suspect the defendant's identity because the identity of the defendant is not an element of a cause of action.") (internal quotation omitted); *Gutierrez*, 39 Cal. 3d at 898 ("It is irrelevant that

---

[5]  Additionally, both the Hussein Action and the Foss Derivative Action were filed more than three years before Plaintiff commenced this action, and brought similar claims for breaches of fiduciary duty. (Compl. ¶ 105; Opp. at 24 n.7 [arguing that the "overlapping legal and factual issues between" Plaintiff's action and the Foss Derivative Action warrant consolidation of the cases].)  These publicly filed lawsuits also were sufficient to put Plaintiff on inquiry notice of the facts underlying her breach of fiduciary duty and abuse of control claims more than three years before she filed her Complaint.  *See In re Wells Fargo Mortg.-Backed Certificates Litig.*, No. 09-CV-01376-LHK, 2010 WL 4117477, at *7 (N.D. Cal. Oct. 19, 2010) (previously filed complaints with "many of the same factual bases now alleged" in the plaintiff's complaint indicated that the plaintiff knew or should have known of the basis for her claims from the time those lawsuits were filed); *NBCUniversal Media, LLC v. Superior Court*, 225 Cal. App. 4th 1222, 1234 (2014) ("[T]he discovery rule does not operate to delay accrual of a cause of action beyond the point at which their factual basis became accessible to plaintiff to the same degree as it was accessible to every other member of the public.") (quotation omitted).

the plaintiff is ignorant of his legal remedy or the legal theories underlying his cause of action.").  Once Plaintiff was suspicious that she had been injured by QSI's allegedly material misrepresentations on July 26, 2012, the statute of limitations began to run.  "So long as a suspicion exists, it is clear that the plaintiff must go find the facts; she cannot wait for the facts to find her." *Jolly*, 44 Cal. 3d at 1111.[6]

Plaintiff also contends that she was not "on notice of valuable derivative claims" until after the Ninth Circuit issued an opinion in July 2017, reversing an order of dismissal of the Securities Class Action.  (Opp. at 21.)  Only at that point, did she know that "the Board faces a substantial likelihood of liability for the claims asserted in this action."  (*Id*.)  But the statute of limitations begins to run even if Plaintiff was not aware of some facts necessary to assert her claim.  *Jolly*, 44 Cal. 3d at 1111 ("A plaintiff need not be aware of the specific 'facts' necessary to establish the claim; that is a process contemplated by pretrial discovery.  Once the plaintiff has a suspicion of wrongdoing, and therefore an incentive to sue, she must decide whether to file suit or sit on her rights.").  Moreover, the Ninth Circuit's ruling in the Securities Class Action claims did not disclose any new facts relevant to Plaintiff's claims–those facts had been disclosed *at least* since that action was commenced in 2013.

Count 1 also includes allegations that Defendants breached their fiduciary duties by amending certain indemnification agreements in January 2013.  (Compl. ¶¶ 146–48.)  Plaintiff discovered, or in the exercise of reasonable diligence could have discovered, that Defendants had amended the alleged indemnification agreements on January 28, 2013, when she alleges that QSI publicly announced the amendments.  (*Id*. ¶ 148.)  The three-

---

[6] Plaintiff nevertheless compares this action to cases in which the factual basis underlying the plaintiff's claims was non-public or not readily accessible information.  (Opp. at 22 [citing *In re Zoran Corp. Derivative Litig.*, 511 F. Supp. 2d 986, 1014 (N.D. Cal. 2007) (stock option backdating lawsuit); *Ryan v. Gifford*, 918 A.2d 341, 359 (Del. Ch. 2007) (same)].)  These cases are inapposite because Plaintiff was or could have been aware of QSI's public disclosures on July 26, 2012, as well as the factual bases for the Hussein Action and Foss Derivative Action, years before she filed her Complaint.

year statute of limitations also had run on these allegations when Plaintiff waited until September of 2017 to file her Complaint in this action.

Count 1 also includes allegations that Defendants breached their fiduciary duties by failing to fire Plochocki "for his wrongful conduct," more specifically, permitting QSI to make material misrepresentations concerning its sales and earnings prospects in 2011 and 2012.  (*Id*. ¶¶ 160–63.)  Because Plaintiff alleges QSI revealed that these statements were false as of July 26, 2012, she discovered, or in the exercise of reasonable diligence could have discovered, that Defendants did not fire Plochocki for this alleged conduct as of July 26, 2012.  Thus, Plaintiff's claim based on Defendants' failure to discipline Plochocki, including failing to seek recoupment of his salary, is time barred by the applicable three-year statute of limitations.

Count 2 includes allegations that Defendants abused their control by "engaging in insider trading, allowing others to engage in insider trading, and failing to seek recoupment of insider trading proceeds" from Plochocki.  (*Id*. ¶ 194.)  Plochocki allegedly engaged in insider trading in February 2012.  The material, non-public information that Plochocki allegedly relied on was QSI's actual sales and earnings prospects, which were revealed to be false on July 26, 2012.  Count 2 includes further allegations that Defendants abused their control by "failing to seek recoupment of . . . incentive compensation from Plochocki and Holt."  (*Id*.)  Plaintiff alleges that the QSI Compensation Committee awarded Plochocki and Holt excessive incentive compensation in 2012 and 2013 and failed to claw back this compensation in light of the two Directors' issuance of the materially misleading statements about QSI's pipeline.  (*Id*. ¶¶ 181, 183–84.)  Like Plaintiff's other allegations that concern Defendants' material misrepresentations, these allegations began to accrue on July 26, 2012, and the three-year statute of limitations had run when Plaintiff filed her Complaint.

Plaintiff also alleges in the body of her Complaint that "[r]ather than protecting the Company's interests by suing Plochocki for his wrongful conduct [regarding the material misrepresentations at issue], the Board demonstrated its allegiance to Plochocki by allowing him to resign rather than firing him for cause." (*Id.* ¶ 160.)  Plaintiff also alleges that QSI revealed its approval of Plochocki's separation agreement, which superseded his prior employment agreement, on July 2, 2015.  (*Id.* ¶¶ 161–63.)  His separation agreement provided for certain benefits, such as continuing healthcare coverage, vesting of his June 3, 2014, stock option grant, and the prorated value of his cash and equity bonuses for 2015 and 2016.  (*Id.*)  Defendants characterize the act giving rise to Plaintiff's claim as the Board's failure to fire or discipline Plochocki when QSI's material misrepresentations were revealed on July 26, 2012.  (Dkt. 30 [Defendants' Reply, hereinafter "Reply"] at 5.)  But Plaintiff's allegations concern the Board's approval of Plochocki's separation agreement *in 2015*, so this claim did not accrue until that decision was made.  *See Silver v. Goldman Sachs Grp., Inc.*, No. CV 10-4961 RSWL AJWX, 2011 WL 1979241, at *4 (C.D. Cal. May 19, 2011) (holding that the statute of limitations did not begin to run until the defendants allegedly breached the contract at issue and began to be unjustly enriched).  Plaintiff's claims for breach of fiduciary duty and abuse of control predicated on these allegations did not begin to accrue until July 2, 2015, when QSI publicly revealed Plochocki's separation agreement.[7]  Consequently, the three year statute of limitations had not run on these allegations when Plaintiff filed her Complaint.

//

//

---

[7]  Defendants argue that neither of Plaintiff's breach of fiduciary duty counts mention the Board approving Plochocki's separation agreement, thus Plaintiff has failed to allege a cause of action based upon these allegations.  (Mot. at 9–10, 22.)  However, both breach of fiduciary duty counts incorporate all of the Complaint's allegations by reference.  (Compl. ¶¶ 188, 193.)  The Court must construe Plaintiff's allegations in her favor at this stage, and these allegations could support either of Plaintiff's breach of fiduciary duty claims.

**B.  Counts 3 and 4 – Unjust Enrichment and Insider Trading**

In Count 3, Plaintiff asserts that Defendants Razin, Plochocki, and Holt were unjustly enriched.  (Compl. ¶¶ 198–200.)  Under this Count, Plaintiff "incorporates by reference and realleges each and every allegation set forth" in the Complaint, but does not reference any specific allegations.  (*Id.*)  This Count appears to refer to Plaintiff's allegations that the Board awarded Plochocki and Holt excessive incentive compensation for Fiscal Year 2012 ("FY2012")[8] when the Board allegedly made material misrepresentations, and failed to clawback this compensation.  (*Id.* ¶¶ 149–59.)  Plaintiff alleges Razin was unjustly enriched when he continued to receive health and life insurance benefits after his employment with QSI ended.[9]  (*Id.* ¶¶ 133, 142–43.)

The parties dispute whether the two year statute of limitations period under Cal. Civ. Proc. Code § 339, or the three year statute of limitations period under Cal. Civ. Proc. Code § 338(d) applies.[10]  (Mot. at 8; Opp. at 22 n.2.)  Even if a three year statute of limitations period applies, Plaintiff's unjust enrichment claim is time barred.  Any unjust enrichment by Plochocki or Holt began to accrue on July 26, 2012, when QSI revealed the falsity of its prior financial statements and allegedly revealed that Plochocki and Holt were overcompensated for FY2012.  And Plaintiff's allegations concerning Razin's unjust enrichment are taken from the Hussein Action, (Compl. ¶¶133, 142–43), and thus began to accrue at least as of October 4, 2013, when that action was filed.  More than three years elapsed before Plaintiff filed her Complaint, so this count is time barred.

---

[8]  QSI's FY2012 began on April 1, 2011, and ended on March 31, 2012.  (Compl. ¶ 6 n.2.)

[9]  While Plaintiff does not specify in the Complaint, or in her Opposition, that her unjust enrichment claim is based on Razin's receipt of insurance benefits, the related Foss Derivative Action asserts a claim for unjust enrichment against Razin based on these allegations.  (*See Foss v. Barbarosh*, No. 8:14-cv-00110-CJC-JPR (C.D. Cal. Jan 24, 2014) Dkt. 1 ¶¶ 72–73, 104–06.)

[10]  Defendants argue that Plaintiff has abandoned Count 3 for unjust enrichment, as she does not address whether this count is barred by the statute of limitations in her Opposition.  (Reply at 4.)  Indeed, Plaintiff's only mention of her unjust enrichment claim in her Opposition is to dispute the applicable limitations period.  (Opp. at 22 n.2.)

In Count 4, Plaintiff asserts that Defendant Plochocki engaged in insider trading in breach of his fiduciary duties when he traded on the material, non-public information of QSI's current and future earnings before QSI revealed that information on July 26, 2012.[11]  (Compl. ¶¶ 201–04.)  Fiduciary duty claims are governed by a three-year statute of limitations if they sound in fraud, and a four-year statute of limitations if they do not.  *See* Cal. Civ. Proc. Code § 338(d).  This claim began to accrue on July 26, 2012, when QSI revealed the material, non-public information on which Plochocki allegedly relied to commit insider trading, more than three years before Plaintiff filed the Complaint.  Plaintiff's insider trading claim is also time barred.

In sum, all of Plaintiff's claims, except for Plaintiff's claims for breach of fiduciary duty and abuse of control predicated on Defendants' approval of Plochocki's separation agreement, are barred by the applicable statute of limitations.  The Court now turns to the issue of whether those remaining claims, although timely, are barred by Plaintiff's failure to comply with the shareholder demand requirement under Federal Rule of Civil Procedure 23.1 before filing her Complaint.

## C.  Demand Futility

"A shareholder seeking to vindicate the interests of a corporation through a derivative suit must first demand action from the corporation's directors or plead with particularity the reasons why such demand would have been futile."  *Rosenbloom v. Pyott*, 765 F.3d 1137, 1148 (9th Cir. 2014) (quoting *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 989 (9th Cir. 1999) (as amended)).  Such requirement follows from

---

[11]  Defendants also argue that Plaintiff has abandoned Count 4, as she does not address whether this count is barred by the statute of limitations in her Opposition.  (Reply at 4.)  Indeed, Plaintiff's only mention of Plochocki's alleged insider trading is as a basis for Counts 1 and 2, regarding Defendants' actions that allegedly allowed Plochocki to commit insider trading, and their failure to discipline or fire him for his alleged actions.  (*See generally* Opp. at 2, 12, 17.)

"the general rule of American law . . . that the board of directors controls a corporation." *Potter v. Hughes*, 546 F.3d 1051, 1058 (9th Cir. 2008).  "The board's control includes and ought to include the decision whether to pursue litigation when the corporation may have suffered harm." *La. Mun. Police Emps.' Ret. Sys. v. Wynn*, 829 F.3d 1048, 1057 (9th Cir. 2016).  Hence, "[a]bsent sufficient reason to doubt the directors' ability to make disinterested and independent decisions about litigation, the board is not only empowered but optimally positioned to make decisions on behalf of the corporation and, if appropriate, pursue litigation." *La. Mun. Police Emps.' Ret. Sys. v. Pyott*, 46 A.3d 313, 339 (Del. Ch. 2012), *rev'd sub nom. on other grounds Pyott v. La. Mun. Police Emps.' Ret. Sys.*, 74 A.3d 612 (Del. 2013).  In the context of demand futility, "directors are entitled to a *presumption* that they were faithful to their fiduciary duties," and "the burden is upon the plaintiff in a derivative action to overcome that presumption." *Beam ex rel. Martha Stewart Living Omnimedia, Inc. v. Stewart*, 845 A.2d 1040, 1048–49 (Del. 2004) (emphasis in original).

The parties do not dispute that Plaintiff did not make the required demand upon the Board before bringing her derivative claims, but only dispute whether Plaintiff has pled particularized allegations demonstrating that demand is futile.  Federal Rule of Civil Procedure 23.1 requires a plaintiff to "state with particularity . . . the reasons for not obtaining [the desired action from the directors or comparable authority] or not making the effort."  Fed. R. Civ. P. 23.1 (b)(3).  Additionally, "[t]he substantive law which determines whether demand is, in fact, futile is provided by the state of incorporation of the entity on whose behalf the plaintiff is seeking relief." *Rosenbloom*, 765 F.3d at 1148 (quoting *Scalisi v. Fund Asset Mgmt., L.P.*, 380 F.3d 133, 138 (2d Cir. 2004)).  QSI is a California corporation.  California courts look to Delaware law to determine the adequacy of the pleading of demand futility. *Apple Inc. v. Superior Court*, 18 Cal. App.

5th 222, 233 (Ct. App. 2017) (citing *Bader v. Anderson*, 179 Cal. App. 4th 775, 797 (Ct. App. 2009)).[12]

To adequately allege demand futility under Delaware law, Plaintiff must establish that a majority of the Board at the time the Complaint was filed (1) is "interested," meaning that the Board member faces "a substantial likelihood of liability" with respect to each alleged claim, *Aronson v. Lewis*, 473 A.2 805, 815 (Del. 1984), or (2) lacks "independence," meaning that the Board member "is 'beholden' to an *interested* director or officer, or so under their influence that their discretion would be sterilized," *Bader*, 179 Cal. App. 4th at 792 (citations omitted).[13] "But where there is no director who is interested in the transaction, there is no need to consider the independence of the remaining directors." *In re Dow Chem. Co. Derivative Litig. ("Dow Chem.")*, No. CIV.A. 4349-CC, 2010 WL 66769, at *7 (Del. Ch. Jan. 11, 2010) (citing *Brehm v. Eisner*, 746 A.2d 244, 258 (Del. 2000) (because the plaintiff failed to create a reasonable doubt that the director was disinterested, the court "need not reach or comment . . . on the independence of the other directors")); *see also In re Google, Inc. S'holder Derivative Litig.*, No. C 11-4248 PJH, 2013 WL 5402220, at *4 (N.D. Cal. Sept. 26, 2013). If all

---

[12]  Plaintiff indicates that California law differs from Delaware law in two ways, but makes no argument about how these differences affect the Court's demand futility analysis. (*See* Opp. at 4.)  Plaintiff also argues that California Courts "have historically given derivative suit standing requirements a liberal construction." (Opp. at 4 [citing *Patrick v. Alacer Corp.*, 167 Cal. App. 4th 995, 1011 (Ct. App. 2008), *as modified on denial of reh'g* (Nov. 21, 2008)].)  However, the court in *Patrick* made this observation as applied to whether the plaintiff was a beneficial shareholder, and the court's reasoning made no mention of the demand futility standard.

[13]  Under Delaware law, courts apply the *Aronson* test for claims challenging a specific board action or decision, and the *Rales* test in all other circumstances.  *Bader*, 179 Cal. App. 4th at 791; *see Aronson*, 473 A.2 at 814; *Rales v. Blasband*, 634 A.2d 927, 933–34 (Del. 1993).  The distinction between the two tests is "largely academic."  *Leyte-Vidal v. Semel*, 220 Cal. App. 4th 1001, 1010 (2013).  Under either test, the shareholder plaintiff must allege with particularity that a majority of board members were not independent or disinterested.  *Oswald v. Humphreys*, No. C16-00241 CRB, 2016 WL 6582025, at *1 (N.D. Cal. Nov. 7, 2016) (citing *Beam*, 845 A.2d at 1046); *see Rosenbloom*, 765 F.3d at 1150 (the distinction between *Aronson* and *Rales* "does not matter" in cases in which the plaintiff alleges a violation of the duty of loyalty; "Under either approach, demand is excused if Plaintiffs' particularized allegations create a reasonable doubt as to whether a majority of the board of directors faces a substantial likelihood of personal liability for breaching the duty of loyalty.").

directors lack a personal or adverse interest in the claim, the beholdenness of any director

to another director "is irrelevant because there is no fear that [any] director . . . will do

anything contrary to the best interest of the company and its stockholders." *Dow Chem.*,

2010 WL 66769, at *8.

      To demonstrate that a director is interested, the plaintiff must demonstrate that the

director faces "a substantial likelihood of director liability" for the alleged actions.

*Aronson*, 473 A.2d at 815.  "A 'mere threat of personal liability for approving a

questioned transaction' by itself is insufficient to refute the disinterestedness or

independence of a director." *Bader*, 179 Cal. App. 4th at 792 (quoting *Aronson*, 473

A.2d at 815.)  A company's choice to limit director liability affects whether a director

faces a substantial likelihood of liability.  Under QSI's articles of incorporation,

authorized by Section 204(a)(10) of California Corporations Code, QSI limits Board

member liability "to the fullest extent permissible under California law."  (Dkt. 26-2 Exs.

1, 2.)[14]  Under Section 204(a)(10), a corporation may not discharge a director from

---

[14]  Defendants' request for judicial notice, (Dkt. 27), is GRANTED as to Exhibits 1, QSI's Restated Articles of Incorporation, filed with the SEC on January 11, 1996, and 2, QSI's Amended and Restated Bylaws, filed with the SEC on October 30, 2008.  Rule 201(b) of the Federal Rules of Evidence authorizes courts to take judicial notice of facts that are "not subject to reasonable dispute" and that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).  As an initial matter, Plaintiff does not dispute the accuracy of these exhibits.  The Court may take judicial notice of these exhibits as publicly available documents filed with the SEC.  *See Dreiling v. Am. Exp. Co.*, 458 F.3d 942, 946 n.2 (9th Cir. 2006) (Courts may consider "any matter subject to judicial notice, such as SEC filings," when considering a 12(b)(6) motion).  "[A] district court may take judicial notice of the contents of relevant public disclosure documents required to be filed with the SEC as facts capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."  *In re Silicon Graphics*, 970 F. Supp. at 758 (citation omitted). Additionally, courts routinely consider a company's certificate of incorporation and bylaws in assessing a motion to dismiss a derivative suit.  *See, e.g., In re Polycom, Inc.*, 78 F. Supp. 3d 1006, 1014 n.3, n.4 (N.D. Cal. 2015); *Brown v. Moll*, No. C 09–05881 SI, 2010 WL 2898324, at *1 n.1, *4 (N.D. Cal. July 21, 2010); *see also Grant v. Aurora Loan Servs., Inc.*, 736 F. Supp. 2d 1257, 1265 (C.D. Cal. 2010) (taking judicial notice of articles of incorporation).  Finally, "[f]acts of independent legal significance constituting a contract which is at issue are not hearsay."  *United States v. Rubier*, 651 F.2d 628, 630 (9th Cir. 1981) (per curiam).  A document "which . . . itself affects the legal rights of the parties" is not introduced for the truth of the matter asserted because "the significance of [the] offered statement lies solely in the fact that it was made." Fed. R. Evid. 801(c) advisory committee's note.  Because QSI's

liability for, among others, intentional misconduct, knowing violations of law, bad-faith actions, or receipt of improper personal benefits.  Accordingly, Plaintiff must plead a nonexculpated claim against each Board member based on particularized facts that show bad faith or some other misconduct on the part of the Board member.  *Guttman v. Huang*, 823 A.2d 492, 501 (Del. Ch. 2003); *see also Gordon v. Bindra*, No. 2:14-CV-01058-ODW, 2014 WL 2533798, at *5 (C.D. Cal. June 5, 2014) (the plaintiff must plead a "nonexculpated claim against the directors based on particularized facts" in light of an exculpatory provision).

Because the majority of Plaintiff's claims are barred by the applicable statute of limitations, the Court will only consider the parties' arguments regarding demand futility as applied to the Board's approval of Plochocki's separation agreement.  The composition of QSI's nine member Board at the time of Plochocki's resignation included Plochocki, Barbarosh, Bristol, Malone, Margolis, Panner, Pflueger, Razin, and Rosenzweig.  (Compl. ¶ 170.)  QSI's Board, at the time Plaintiff filed her complaint as well as now, consists of Barbarosh, Bristol, Malone, Margolis, Panner, Razin, Rosenzweig, Frantz, and Klapstein.  (*Id.* ¶¶ 167–68.)  Two Board members, Frantz and Klapstein, joined after the alleged misconduct occurred, and thus cannot face potential liability for Plaintiff's separation agreement claims.  *See In re Am. Int'l Grp., Inc. Derivative Litig.*, 700 F. Supp. 2d 419, 440 (S.D.N.Y. 2010), *aff'd*, 415 F. App'x 285 (2d Cir. 2011).  To demonstrate that demand upon QSI's Board at the time of filing her Complaint would have been futile, Plaintiff must allege with particularity that at least five of the seven remaining Board members face a substantial likelihood of harm for bad faith or other wrongful conduct.  *See Beam*, 845 A.2d at 1046.

---

Articles of Incorporation and Bylaws are corporate documents that affect the legal rights of Defendants and the exculpatory provisions are significant only in the fact they were made, the fact that QSI limits its Board member's liability "to the fullest extent permissible under California law" may be considered for the purpose of adjudicating issues raised by Defendants' motion.

Plaintiff alleges that Plochocki was on the Board when QSI issued material misrepresentations, and that years later the Board permitted him to resign "under a separation agreement with lavish benefits."  (Opp. at 16; Compl. ¶¶ 160–63.)  Under his separation agreement, Plochocki received his previously awarded salary, the ability to enroll in health benefits until June 30, 2016, and the vesting of 20,000 of his QSI stock options.  (Dkt. 26-2 Ex. 6; Compl. ¶ 162.)[15]  In exchange, QSI received Plochocki's assistance with the CEO transition, cooperation with litigation, and non-solicitation of QSI Employees.  (Dkt. 26-2 Ex. 6; Mot. at 23.)  And while QSI obtained a release of liability, QSI did not release Plochocki from claims arising out of "fraudulent or criminal activity."  (Dkt. 26-2 Ex. 6; Mot. at 23.)

"[D]irectors have the power, authority and wide discretion to make decisions on executive compensation."  *Brehm*, 746 A.2d at 262 n. 56.  "A corporate board's decision to honor the corporation's contractual obligations certainly is not a business decision so egregious or irrational that it could not have been based on a valid assessment of the corporation's best interest."  *In re Accuray, Inc. S'holder Derivative Litig.*, 757 F. Supp. 2d 919, 929–30 (N.D. Cal. 2010) (quoting *In re Am. Int'l Group*, 700 F. Supp. 2d at 442). "Where . . . the corporation has received any substantial consideration and where the board has made a good faith judgment that in the circumstances the transaction was worthwhile a finding of waste is inappropriate, even if hindsight proves that the transaction may have been ill-advised."  *In re Polycom, Inc.*, 78 F. Supp. 3d 1006, 1018–19 (N.D. Cal. 2015) (quoting *Protas v. Cavanagh*, No. 6555–VCG, 2012 WL 1580969, at *9 (Del. Ch. Mar. 30, 2012) (internal citations and quotations omitted)).

---

[15]  Defendants' request for judicial notice, (Dkt. 27), is GRANTED as to Exhibit 6, Plochocki's separation agreement.  Plaintiff does not dispute the authenticity of this exhibit, or that this exhibit is referenced in the Complaint.  The Court may consider this exhibit because a court may consider any document "whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the plaintiffs' pleading."  *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (quoting *In re Silicon Graphics*, 183 F.3d at 986)); *see also See In re Yahoo! Inc. S'holder Derivative Litig.*, 153 F. Supp. 3d 1107, 1117 (N.D. Cal. 2015).

Plaintiff's allegations do not demonstrate that any Board member faces substantial liability for approving Plochocki's separation agreement.  First, "the fact that the board approved the challenged transaction, of itself, does not establish demand futility under the theory that such approval automatically connotes hostile interest and guilty participation by directors." *Bader*, 179 Cal. App. 4th at 792 (internal quotations and citation omitted). And Plaintiff does not allege that the Board's approval of the agreement "was made in bad faith, or that the Board was not properly informed." *In re Maxwell Techs., Inc. Deriv. Litig. ("Maxwell")*, 2014 WL 2212155, at *16 (S.D. Cal. May 27, 2014); *see also Wagner v. Selinger*, No. 16740, 2000 WL 85318, at *9 (Del. Ch. Jan. 18, 2000) (demand not futile where Plaintiff did "no more than take issue" with executive's separation package).  Second, QSI received substantial consideration under the agreement, including a release of claims, agreement to assist in the CEO transition, voluntary resignation, and non-solicitation of QSI's employees.  *See In re Polycom, Inc.*, 78 F. Supp. 3d at 1018–19 (finding the company received "substantial consideration" under a separation agreement that provided "a release of [the former CEO's] employment-related claims, an agreement to assist Polycom during its leadership transition, [the former CEO's] voluntary resignation from the board (without requiring a shareholder vote), and various other contractual protections like non-disparagement and anti-solicitation provisions").  These provisions clearly provide benefits to QSI.

Moreover, Plaintiff does not allege that the separation agreement "was outside the range of acceptable and rational agreements." *Maxwell*, 2014 WL 2212155, at *16.  On its face, Plochocki's separation agreement provided compensation he was already entitled to by virtue of his pre-existing relationship with QSI, and Plaintiff does not allege that he received more than he would have received had the Board terminated him for cause.  *See In re HP Derivative Litigation*, No. 5:10-CV-3608 EJD, 2012 WL 4468423, at *8 (N.D. Cal. Sept. 25, 2012) ("Compensation given in consideration for previously completed performance is not improper '[w]here the amount awarded is not unreasonable in view of

the services rendered.'") (quoting *Underbrink v. Warrior Energy Servs. Corp.*, 2008 WL 2262316, at * 10 n.92 (Del. Ch. May 30, 2008)).  And the separation agreement did not release QSI's potential claims against Plochocki.  "As a result, the separation agreement protected [QSI] from potential future litigation by [Plochocki], while still preserving the Board's prerogative to bring suit against [Plochocki] if the Board later discovered grounds for doing so."  *In re Polycom, Inc.*, 78 F. Supp. 3d at 1019.  Plaintiff has not raised any reasonable doubt that the Board's decision "fell outside the outer limits of the Board's broad discretion to determine how to compensate [Plochocki]."  *Maxwell*, 2014 WL 2212155, at *16; *cf. In re Citigroup Inc. S'holder Derivative Litig.*, 964 A.2d 106, 138 (Del. Ch. 2009) (excusing demand for the plaintiff's waste claim regarding approval of a compensation package that included $68 million, including bonus, salary, and accumulated stockholdings "to a departing CEO whose failures as CEO were allegedly responsible, in part, for billions of dollars of losses").

Plaintiff argues that her allegations demonstrate that Plochocki's misconduct warranted "termination and litigation," and that permitting him to resign "is itself a breach of duty of loyalty."  (Opp. at 16–17.)  "The duty of loyalty . . . is violated '[w]here directors fail to act in the face of a known duty to act, thereby demonstrating a conscious disregard for their responsibilities [and] failing to discharge [the non-exculpable fiduciary duty of loyalty] in good faith.'"  *Rosenbloom*, 765 F.3d at 1150 (quoting *Stone ex rel. AmSouth Bancorporation v. Ritter*, 911 A.2d 362, 370 (Del. 2006)).  "A plaintiff who cannot point to facts supporting such a decision can plead that the board consciously failed to act after learning about evidence of illegality."  *South v. Baker*, 62 A.3d 1, 15 (Del. Ch. 2012); *see Rosenbloom*, 765 F.3d at 1151 ("If a majority of the Board had actual or constructive knowledge of violations of the law at Allergan involving off-label promotions of Botox and did nothing, it violated its duty of loyalty and faces a substantial likelihood of liability.")  Plaintiff has not alleged specific facts showing the Board received and intentionally ignored evidence that Plochocki committed any illegal act, or

that Plochocki, or any other Board member, has been found to have made material misrepresentations.  (Reply at 18.)  Without such allegations, Plaintiff has failed to demonstrate that Defendants failed to act in the face of a known duty to act.[16]

### D.  Further amendment would be futile

Now that the Court has determined that the majority of Plaintiff's claims are barred by the statute of limitations, and Plaintiff's Complaint fails to plead particularized facts demonstrating that demand on QSI's Board would have been futile as to Plaintiff's remaining claims, it must decide whether to grant Plaintiff leave to amend the Complaint to cure those deficiencies.  In most instances, leave to amend must be freely granted, Fed. R. Civ. P. 15(a), and that policy is "to be applied with extreme liberality," *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003).  However, leave to amend is not warranted if the Complaint cannot be saved by amendment.  *See Foman v. Davis*, 371 U.S. 178, 182 (1962); *Arizona Students' Ass'n v. Arizona Bd. of Regents*, 824 F.3d 858, 871 (9th Cir. 2016) ("Dismissal of a complaint without leave to amend is only proper when, upon *de novo* review, it is clear that the complaint could not be saved by any amendment.").  That is the case here.

Plaintiff provides no information regarding allegations she could add to the Complaint to cure the deficiencies.  (*See generally* Opp.)  With respect to Plaintiff's claims that are barred by the statute of limitations, it would "be impossible for [plaintiff] to allege facts demonstrating" that she could avoid the statute of limitations.  *See Marino v. Countrywide Fin. Corp.*, 26 F. Supp. 3d 955, 963 (C.D. Cal. 2014), *aff'd*, 602 F. App'x

---

[16]  Plaintiff also alleges that Razin holds 16.2% of QSI's stock.  (Compl. ¶ 175.)  While a majority or control stockholder "will satisfy the interest hook of the *Aronson* test," here there is no control or majority stockholder, "so the relevant persons to examine for purposes of interest are the directors, and absent an interest hook, the Court need not consider the remaining directors' independence."  *Dow Chem.*, 2010 WL 66769, at *7 n.36.

403 (9th Cir. 2015) (dismissing the balance of plaintiff's cause of action with prejudice because his "allegations demonstrate that it would be impossible for [him] to allege facts demonstrating that the discovery rule would allow him to avoid the statute of limitations."). With respect to Plaintiff's claims regarding Plochocki's separation agreement, Defendants do not face a substantial likelihood of liability on those claims and are disinterested. *See In re Yahoo! Inc. S'holder Derivative Litig.*, 153 F. Supp. 3d 1107, 1128 n.14 (N.D. Cal. 2015) (dismissing a derivative action without leave to amend where defective futility allegations could not be cured); *In re Silicon Graphics*, 183 F.3d at 991 (affirming dismissal of derivative action without leave to amend where defective futility allegations could not be cured). Thus, granting Plaintiff leave to amend would be a pointless exercise.

**IV.  CONCLUSION**

For the foregoing reasons, Defendants and nominal defendant's motion to dismiss is GRANTED, and Plaintiff's Complaint is DISMISSED WITH PREJUDICE.


DATED:      July 25, 2018


_____

CORMAC J. CARNEY

UNITED STATES DISTRICT JUDGE